UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

**CHAMBERS OF**
**THE HONORABLE GINA L. SIMMS**
**UNITED STATES MAGISTRATE JUDGE**



**6500 CHERRYWOOD LANE**
**GREENBELT, MARYLAND 20770**

August 7, 2024

LETTER TO COUNSEL

    RE:   *Helen B. v. O'Malley, Commissioner of Social Security*[1]
           Civil No. GLS-23-02345

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Helen B. and the Social Security Administration. (ECF Nos. 7, 9).[2] Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2023).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny both motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

**I.    BACKGROUND**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on August 11, 2020. (Tr. 10). In the application, the Plaintiff alleges that disability began on March 17, 2019. (*Id.*). The claim was initially denied on March 9, 2021, and upon reconsideration, denied again on June 9, 2022. On June 21, 2022, Plaintiff filed a written request for a hearing, which was granted. A telephone hearing was conducted on January 10, 2023 by an

---

[1] On August 28, 2023, Plaintiff filed her case against Kilolo Kijakazi, the then-Acting Commissioner of Social Security. (ECF No. 1). On December 20, 2023, Martin O'Malley became the Commissioner of the Social Security Administration. Accordingly, consistent with Fed. R. Civ. P. 25(d), Commissioner O'Malley has been substituted as the Defendant in this case.

[2] On December 26, 2023, the Plaintiff filed her "Motion for Summary Judgment or, in the Alternative, Motion for Remand." (ECF No. 7). On February 13, 2024, the Defendant filed its "Commissioner's Brief." (ECF No. 9). For the purposes of this Letter Opinion and the accompanying Order, the Court shall construe both filings as motions for summary judgment, respectively.

*Helen B. v. O'Malley, Commissioner of Social Security*
Civil No. GLS-23-02345
August 7, 2024
Page 2

Administrative Law Judge ("ALJ").  (*Id.*).  At the hearing, the Plaintiff amended her alleged onset of disability date to July 4, 2019.  (Tr. 10, 44).  On February 6, 2023, the ALJ found that the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act.  (Tr. 10-20). On June 30, 2023, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision (dated February 6, 2023) became the final and reviewable decision of the SSA.  (Tr. 1). *See also* 20 C.F.R. § 422.210(a).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a).  *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings").  If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

A. RFC

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 12-20). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 4, 2019, the amended alleged onset date of Plaintiff's disability. (Tr. 12). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, status post broken arm, anxiety, and bipolar disorder. (*Id.*). The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (Tr. 12, 13). However, at step three the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 13-15). Taking into account Plaintiff's severe impairments, the ALJ next assessed the Plaintiff's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) except Plaintiff can never climb stairs or ladders and can perform no overhead reaching. Plaintiff can never work with the public and can have occasional contact with co-workers and supervisors. Plaintiff can perform no production rate or pace work (no assembly line or fast-paced production). Plaintiff is limited to working in a low stress environment with occasional decision making and occasional changes in the work setting. Due to issues with pain and fatigue, Plaintiff would be off task for 5 percent of the workday.

(*Id.* at 15). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 19).

B. Hearing – Vocational Expert's Testimony

a. *Time Off-Task*

Before making a finding at step five, the ALJ conducted a hearing. (Tr. 57-63). At that hearing, a vocational expert ("VE") testified, relying upon "The Dictionary of Occupational Titles" and her own experience as a vocational rehabilitation counselor. The VE identified the Plaintiff's past relevant work: a Waitress. (*Id.* at 57). The ALJ asked if there are any transferable skills from Plaintiff's past work, and the VE opined that there were no transferable skills. (*Id.* at 57-58).

The ALJ then presented a series of hypotheticals to the VE. The ALJ asked the VE whether a hypothetical individual with Plaintiff's RFC would be able to perform the Plaintiff's past relevant work as a Waitress with the following alterations: (1) at the "light" exertional level, rather than at a "medium" exertional level; and (2) with a "sit/stand option," where the hypothetical individual would be able move around and "be off task around five minutes at a time." (Tr. 59-60). The VE opined that the hypothetical individual would be unable to work as a Waitress, as there is no sit/stand option for that work. (*Id.* at 60.). The ALJ asked whether there are any other jobs in the

national economy that the hypothetical individual would be able to perform on a sustained basis. (*Id*.). The VE opined that there were no jobs that the hypothetical individual could perform, but also noted that the definition that the ALJ provided for a sit/stand option was incorrect. (*Id.*). The VE elaborated that a sit/stand option is one where the hypothetical individual can sit and stand in the same area and remain on task. (*Id.*). Since the definition used by the ALJ included moving around five minutes every hour, which means that the individual would be off-task for that amount of time every hour, the VE opined that the hypothetical individual would be unable to remain on task "90% of the time," which rendered her unable to maintain work. (*Id.*).

Next, the ALJ asked the VE whether a hypothetical individual with the same age, education, work experience, and RFC as the Plaintiff, would be able to perform the Plaintiff's past work with the following changes: (1) at the "sedentary" exertional level rather than the medium exertional level; and (2) being off-task 10% of the workday, rather than 5%(Plaintiff's RFC). (Tr. 61). The VE opined that the hypothetical individual would not be able to perform the Plaintiff's past work. (*Id.*). The ALJ asked the VE whether there are any jobs that exist in the national economy that the hypothetical person could perform on a sustained basis. (*Id.*). The VE opined that there are no jobs in the national economy that the hypothetical individual could perform on a sustained basis. (*Id.*). The VE elaborated that, according to the Department of Labor, the hypothetical individual would be unable to maintain work while being off-task 10% of the time. (*Id.*).

The ALJ also asked the VE whether a hypothetical individual with the same age, education, and work experience as the Plaintiff, with her exact RFC, would be able to perform Plaintiff's past relevant work. (Tr. 58). The VE opined that the hypothetical individual would not be able to perform the Plaintiff's past work. (*Id.*). The ALJ also asked the VE whether there exists any other work that the hypothetical individual would be able to perform on a sustained basis. (Tr. 58). The VE opined that the hypothetical individual could perform "some medium jobs" existing in the national economy, e.g., as a Laundry Laborer, Machine Feeder, and Factory Helper. (Tr. 58-59).

b. *Unscheduled Absences*

After the ALJ concluded posing questions to the VE, Plaintiff's attorney asked the VE about an employer's general tolerance for unscheduled absences. (Tr. 61). The VE opined that, after a probationary period with no absences has passed, the acceptable level is a day-and-a-half of absences per month, including late arrivals and early departures. (*Id.*). The Plaintiff's attorney asked the VE whether any of the hypothetical individuals, as presented by the ALJ, would be precluded from employment should they have two unscheduled absences a month. (Tr. 61-62). The VE opined that each of the hypothetical individuals would be precluded from employment if they had two unscheduled absences per month. (*Id.* at 62).

C. ALJ's Final Determination

At step five, the ALJ ultimately determined that Plaintiff was not disabled. (Tr. 19-20). In making her determination, the ALJ relied on the VE's testimony that a hypothetical individual

with Plaintiff's exact RFC, without any additional limitations, would be able to perform work existing in significant numbers in the national economy. (Tr. 19-20, 58-59). Specifically, the ALJ determined that Plaintiff could maintain work as a Laundry Laborer, Machine Feeder, and Factory Helper, after the VE testified that a hypothetical individual with Plaintiff's exact RFC could perform those jobs. (*Id.*).

### III.    DISCUSSION

In requesting summary judgment, Plaintiff advances two arguments: (1) that the ALJ erred in finding that Plaintiff could perform "medium" rather than "light" work; and (2) that the ALJ erred by failing to include off-task and absenteeism limitations in the Plaintiff's RFC to account for her anxiety, depression, and bipolar disorder. (ECF No. 7-1, "Plaintiff's Motion," pp. 11-13). The SSA counters that: (1) the ALJ built an accurate and logical bridge between the evidence and her finding that Plaintiff could perform medium work; and (2) the ALJ built an accurate and logical bridge between the evidence and Plaintiff's RFC. (ECF No. 9, "SSA's Motion," pp. 6-15).

I have carefully reviewed the arguments and the record. I find Plaintiff's argument that the ALJ failed to adequately account for her anxiety, depression, and bipolar disorder to be persuasive. Accordingly, I find remand appropriate, for the reasons set forth below.

   A. <u>The ALJ's Determination that Plaintiff is Capable of Medium Work is Supported by Substantial Evidence</u>

Plaintiff asserts that the ALJ erred by determining that Plaintiff is capable of performing medium work because substantial evidence only supports an RFC finding that Plaintiff can perform light work. (Plaintiff's Motion, pp. 11-12). Specifically, Plaintiff argues that she is unable to lift fifty pounds, as required by medium work. (*Id.*). In support of her argument, Plaintiff relies on four pieces of evidence: (1) the findings of Dr. Linda Freilich; (2) x-rays of her spine; (3) treatment notes of her broken arm; and (4) Plaintiff's testimony. (*Id.*). The SSA counters that the ALJ reasonably relied upon the medical evidence to determine that Plaintiff could perform medium work and reasonably discounted Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms that were contradicted by other evidence. (Defendant's Motion, pp. 6-15).

As a preliminary matter, the Code of Federal Regulations provides the following related to "medium" work:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R.§ 404.1567(c).

Social Security Ruling 96-8p explains that an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical

*Helen B. v. O'Malley, Commissioner of Social Security*
Civil No. GLS-23-02345
August 7, 2024
Page 6

facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The Fourth Circuit has held that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019); *see also Monroe*, 826 F.3d at 189 ("the ALJ 'must build an accurate and logical bridge from the evidence to his conclusion.'") (internal citation omitted).

In the instant case, Plaintiff cites to the physical examination conducted by Dr. Linda Freilich on February 23, 2021, to support her claim that she cannot perform medium work. (Plaintiff's Motion, p. 11). Specifically, Plaintiff relies on Dr. Freilich's finding that Plaintiff could only lift up to twenty pounds. (Tr. 553). In her opinion, the ALJ provided a detailed analysis of Dr. Freilich's findings, including a diagnosis of degenerative disc disease, that Plaintiff can lift no more than twenty pounds due to her back pain, and cannot sit, bend, or stoop for short periods of time due to her back pain. (Tr. 18, 552-53). The ALJ also discusses how Dr. Freilich found that Plaintiff's back impairment was not disabling, and that Plaintiff told Dr. Freilich that her main problem was depression. (Tr. 18, 556). In assessing Dr. Freilich's findings, the ALJ determined that Dr. Freilich's examination was "nonpersuasive" since it was at odds with other record evidence, which the ALJ found supports a finding that Plaintiff can perform medium work. (Tr. 18). Specifically, the ALJ was partially persuaded by the State agency opinions of Dr. Bert Spetzler from March 8, 2021, and Dr. Gucharan Singh from December 18, 2021, and March 25, 2022. (Tr. 17-18, 65-85, 88-110, 130-132). Both of the State agency physicians found that Plaintiff could perform medium work, and that she had normal gait, strength, and range of motion (Tr. 17-18, 78, 102, 130). These agency physicians also noted that Plaintiff drives, makes meals, and performs personal care. (*Id.*). Thus, the ALJ examined the record evidence, made credibility determinations, and decided that Dr. Freilich's examination was not persuasive since it was at odds with other record evidence. (Tr. 18).

Plaintiff next cites to x-rays of her spine, taken on February 25, 2021, showing disc height loss at L4-L5 and L5-S1 along with the following ailments: (1) degenerative endplate irregularity; (2) degenerative endplate scoliosis; (3) scatted multilevel anterior small vertebral endplate spurring; and (4) multilevel degenerative facet changes. (Plaintiff's Motion, p. 11; Tr. 558). The ALJ examined the x-rays and noted each of the four findings that Plaintiff discussed, while also noting that the x-rays showed no evidence of acute osseous injury, no fracture or traumatic malalignment, and no spondylolisthesis. (Tr. 17, 558). Additionally, the ALJ examined January 21, 2021, records from Helix Medical Group, who determined that a review of Plaintiff's body systems was negative, that Plaintiff had no actual or suspected pain, had full range of motion and strength, and that her chronic back pain was stable. (Tr. 16-17, 537-39). Furthermore, the ALJ found partially persuasive the opinions of Dr. Spetzler and Dr. Singh, who reviewed the x-rays, and nonetheless determined that Plaintiff could perform medium work. (Tr. 17-18, 72, 78, 103, 130). Thus, the ALJ considered the x-rays of Plaintiff's spine, and relying on other record evidence, determined that Plaintiff could perform medium work.

Plaintiff also cites to emergency room reports indicating that she "fractured her right shoulder/arm" on March 11, 2021. (Plaintiff's Motion, p. 11; Tr. 824-854). The ALJ examined the

reports and found that Plaintiff suffered the fracture after falling and landing on her shoulder, and the emergency room provided x-rays and that Plaintiff was prescribed an arm sling. (Tr. 17, 831-32). The ALJ also examined notes from a follow-up appointment with Dr. David Gold, an orthopedist, on March 16, 2021. (Tr. 17, 567). Dr. Gold also prescribed an arm sling. (*Id.*). The State agency opinions conducted by Dr. Singh on December 18, 2021, and March 25, 2022, which the ALJ found partially persuasive, reviewed the emergency room reports and Dr. Gold's notes and determined that Plaintiff was capable of medium work and not disabled. (Tr. 18, 102-04, 130-31). Thus, the ALJ examined the record evidence regarding Plaintiff's shoulder injury, and nonetheless determined that Plaintiff could perform medium work.

Plaintiff also cites to her own testimony to support her argument that she is not capable of performing medium work. In analyzing a claimant's symptoms, ALJs must follow a two-step process. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020); 20 C.F.R. § 404.1529. First, the claimant must have a medical impairment that could be reasonably expected to produce the claimant's alleged symptoms. *Id.* Second, the ALJ must assess the intensity and persistence of the alleged symptoms and determine how they affect the claimant's ability to work. *Id.*

In the present case, the ALJ followed the two-step process. (Tr. 15). For step one, the ALJ determined that Plaintiff's medical impairments could reasonably be expected to cause her alleged symptoms. (Tr. 16). At step two, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

During her testimony, Plaintiff stated that she cannot lift more than ten pounds, walk for more than fifteen minutes, sit for fifteen minutes, or stand for twenty minutes before changing positions. (Tr. 50, 54). However, the ALJ examined the record evidence, which revealed that Plaintiff was not as disabled as she alleged. Dr. Spetzler and Dr. Singh, the State agency physicians, both opined that Plaintiff could perform medium work, and thus lift up to fifty pounds. (Tr. 17-18, 72, 78, 103, 130). Both Dr. Spetzler and Dr. Singh also found that Plaintiff retains the ability to go the store, drive, make meals, and perform personal care. (Tr. 17-18, 78, 101). The ALJ also reviewed notes from Helix Medical Group, who found that Plaintiff had full range of motion and strength. (Tr. 16-17; 537-39). The ALJ also noted that physical examinations throughout the record were "generally normal." (Tr. 17). Thus, while the ALJ noted that that Plaintiff's medical impairments could reasonably be expected to cause her alleged symptoms, the ALJ ultimately determined that the intensity, persistence and limiting effects of Plaintiff's alleged symptoms were contradicted by the record evidence. Accordingly, the ALJ discounted parts of Plaintiff's testimony which contradicted the record evidence, including that Plaintiff was incapable of lifting fifty pounds.

Thus, the Court finds that the ALJ adequately built a logical bridge linking the evidence to her ultimate conclusion that Plaintiff is capable of performing medium work. *Craig,* 76 F.3d at 589. Accordingly, Plaintiff's argument is unavailing. To the extent that Plaintiff urges the Court to reweigh evidence in her favor, the Fourth Circuit has long held that a reviewing court does not

reweigh the conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Id.* at 589; *Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020).

### B. The ALJ Failed to Properly Account For Plaintiff's Mental Health Impairments

Plaintiff next contends that the ALJ erred by not including an off-task limitation or accounting for unscheduled absences in Plaintiff's RFC to accommodate her anxiety, depression, and bipolar disorder. (Plaintiff's Motion, p. 12). The SSA counters that the ALJ provided an in-depth, narrative discussion of the facts and built a logical bridge between the evidence and Plaintiff's RFC. (Defendant's Motion, pp. 6-15). For the reasons explained below, I find Plaintiff's argument regarding unscheduled absences to be persuasive.

The Court finds instructive *Payne v. Comm'r, Soc. Sec. Admin.* Civ. No. SAG-14-1015, 2015 WL 412923 (D. Md. Jan. 29, 2015). In that case, the claimant had sought medical attention for kidney stones eighteen different times during a certain year, including three surgical procedures and frequent emergency room visits. *Id* at *1. During the hearing, the VE testified that an employee could miss a maximum of one day per month for medical visits while being able to maintain work. *Id.* Despite the testimony from the VE and the record evidence showing the claimant was seeking medical attention more than one day per month, the ALJ did not account for unscheduled absences in the RFC nor explain why she did not do so. *Id.* The court remanded the case back to the ALJ, as there were multiple months after the claimant's disability onset date where he would have missed work more than once a month to seek medical attention. *Id.* Put another way, if the claimant sought medical attention for his kidney stones eighteen times in one year, including three surgeries and emergency room visits, the claimant would have missed work more than one day per month. *Id.* Because the ALJ did not explain how the claimant would be able to work, despite the medical evidence indicating that he would miss more than one day per month, the case was remanded. *Id.*

This case is analogous to *Payne*. Here, the record evidence shows that there were multiple months after Plaintiff's disability onset date where she would have missed more than two days of work due to hospitalizations. (Tr. 61-62). The ALJ does note that from July 4, 2019, to July 7, 2019, Plaintiff was admitted at MedStar Franklin Square Medical Center with complaints of suicidal thoughts. (Tr. 16, 409-36). The ALJ also mentions Plaintiff's July 8, 2019, treatment notes that reflect that Plaintiff was "subsequently admitted to Sheppard Pratt Hospital for suicidal ideation with depressed mood and significant thought disturbance." (Tr. 16, 437). Next, the ALJ cites to treatment notes from August 16, 2019, which indicates that Plaintiff was again admitted to Sheppard Pratt due to worsening depression and suicidal ideation with a plan to cut her wrists. (Tr. 16, 510-11). While the ALJ mentions that Plaintiff was hospitalized, the ALJ does not address the duration of Plaintiff's hospitalizations. (Tr. 16). In addition to the July 4-7, 2019, hospitalization at MedStar Franklin, Plaintiff was hospitalized from July 8-July 19, 2019, and from August 16-August 27, 2019, at Shepperd Pratt. (Tr. 409-36, 459, 487). In total, Plaintiff was hospitalized for fifteen days in July of 2019 and eleven days in August of 2019, a combined amount of twenty-six days. (*Id.*). Despite the evidence that Plaintiff would have been unable to work due to her multiple hospitalizations during these two months, the ALJ did not account for unscheduled absences in the RFC, nor did the ALJ discuss Plaintiff's potential absenteeism elsewhere in her opinion. (Tr. 15-

20, 409-36, 459, 487). The VE also testified that an individual with Plaintiff's RFC would be unable to maintain work if she missed two days per month. (Tr. 61). Thus, the record evidence reflects that that there were multiple months where Plaintiff would have missed work more than two times per month due to mental health hospitalizations. However, consistent with *Payne*, I find that the ALJ does not adequately account for this evidence, nor does she logically explain how Plaintiff could work given the VE's testimony that missing work two days per month precludes employment. In sum, I cannot find that the ALJ's decision was supported by substantial evidence.

In addition, in her decision, the ALJ considered a July 29, 2020, joint letter from Plaintiff's treating psychologist, Dr. Kamau Collins, and psychotherapist, Mr. Gabriel Horan. (Tr. 16, 19, 525). In their letter, Dr. Collins and Mr. Horan detail Plaintiff's hospitalizations and a suicide attempt due to psychotic fixations on imaginary fears and obsessions. (Tr. 525). The letter also discusses how Plaintiff presents as extremely confused, anxious, and paranoid during her therapy sessions, and is "too anxious to think about working again." (*Id.*). Dr. Collins and Mr. Horan concluded that "even given the correct combination of medication and therapy, [Plaintiff] will continue to struggle with day to day activities making work impossible for her." (*Id.*). Even though the ALJ did summarize the findings contained in Dr. Collins' and Mr. Horan's letter, the ALJ failed to provide any analysis of how their findings informed her conclusion that Plaintiff could work without missing more than two days per month. (Tr. 16, 19, 61, 525). Instead, the ALJ determined that the letter was "nonpersuasive." (Tr. 19). In explaining why the letter was "nonpersuasive," the ALJ merely noted that "a determination regarding the claimant's ability to work is a matter reserved for the Commissioner." (*Id.*). While the ALJ is correct that the determination of whether Plaintiff can work is reserved for the Commissioner, the ALJ cannot discard the entire letter and findings of Dr. Collins and Mr. Horan because they briefly opined that Plaintiff cannot work. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 356 (4th Cir. 2023) (holding that a treating physician opining on an issue reserved for the Commissioner "does not allow the ALJ to discount the entirety of the treating physician's statement"). Because the ALJ did not provide any analysis of the substance of Dr. Collins and Mr. Horan's letter, including their findings relating to Plaintiff's hospitalizations, I cannot say that the ALJ's decision was supported by substantial evidence.

In sum, the ALJ does not provide a logical explanation of how the Plaintiff could maintain employment, given the fact that Plaintiff was hospitalized multiple times for a total of twenty-six days in July and August 2019, and given the testimony of the VE. Thus, I cannot find that the ALJ built an accurate and logical bridge between the evidence and her conclusion. *Monroe,* 826 F.3d at 189. Accordingly, remand is appropriate.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, (ECF No. 7), is **DENIED** and Defendant's Motion for Summary Judgment, (ECF No. 9), is **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate

*Helen B. v. O'Malley, Commissioner of Social Security*
Civil No. GLS-23-02345
August 7, 2024
Page 10

finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.  The Clerk of the Court is directed to **CLOSE** this case.

      Sincerely,

      _____/s/_____
      The Honorable Gina L. Simms
      United States Magistrate Judge